# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

**RUTH ANN BROWN**                                                             **PLAINTIFF**

**v.**                        **No. 2:17-CV-00123-BRW-PSH**

**NANCY A. BERRYHILL,**
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security                                                   **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Ruth Brown applied for social security disability benefits with an alleged disability onset date of July 23, 2012. (R. at 96). After a hearing, the administrative law judge (ALJ) denied her application. (R. at 131). The Appeals Council remanded for further proceedings. (R. at 138–39). After a second hearing, the ALJ again denied Brown's application. (R. at 28). The Appeals Council denied Brown's request for review. (R. at 1). The second ALJ's decision now stands as the Commissioner's final decision, and Brown has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

## I. The Commissioner's Decision

The ALJ found that Brown had the severe impairments of diabetes mellitus, migraine headaches, degenerative disk disease, obesity, and gout. (R. at 23). As a result of the impairments, the ALJ determined that Brown had the residual functional capacity (RFC) to perform sedentary work except that she could only occasionally stoop, crouch, bend, kneel, crawl, and balance; could understand, remember and carry out complex instructions; and respond to changes in the workplace. (R. at 23). The ALJ took testimony from a vocational expert (VE) and determined that Brown could not perform her past relevant work. (R. at 26). The VE testified, however, that Brown had acquired transferable skills from her work as assistant manager and department store manager. (R. at 27). The VE testified that a person with Brown's RFC and transferable skills could perform jobs such as personnel clerk and order clerk. (R. at 27). The ALJ therefore held that Brown was not disabled. (R. at 28).

## II. Summary of Medical Evidence

Brown was admitted to White County Medical Center with foot pain on July 23, 2012. (R. at 402). She was diagnosed with plantar fasciitis and discharged home with a Norco prescription and instructions to be off work for one week and have no weight-bearing for one week. (R. at 404). Her foot was also splinted. (R. at 406).

Brown was seen at Westside Family Medical Clinic for ER follow-up on July 27, 2012. (R. at 420). She was seen again on August 10, 2012 to get paperwork for medical leave. (R. at 419). On August 30, 2012, she was seen for a check-up and continued to have issues with gout and heel pain. (R. at 418).

Dr. Bruce Berkheimer treated Brown on September 10, 2012 for right heel pain. (R. at 431). Dr. Berkheimer noted that Brown had a mild, pronated foot type and treated her with a plantar fascia injection. (R. at 431). She visited Dr. Berkheimer for a left heel injection on September 27, 2012. (R. at 475).

On October 16, 2012, Brown visited White County Medical Center for foot pain. (R. at 514). She was diagnosed with a heel spur and discharged. (R. at 516–17).

On October 18, 2012, Dr. Berkheimer noted severe plantar fasciitis/heel spur syndrome, for which he gave her injections and recommended shoes and a night stretching splint. (R. at 476).

Consultative examiner Adam Dooley, M.D. examined Brown on November 17, 2012. (R. at 434–37). Dr. Dooley diagnosed lower back pain with radiculopathy, obesity, and gout; and he opined that Brown could sit, hold a conversation, respond appropriately to questions, carry out and remember instructions, could have no prolonged sitting/walking, and could not lift/carry objects over twenty pounds. (R. at 436).

On December 7, 2012, Brown was seen at McAfee Medical Clinic for shooting pains in her left lower leg. (R. at 481). The doctor prescribed Colcrys, Tramadol and RICE therapy. (R. at 483). On December 22, 2012, she was seen for her gout in her left foot. (R. at 477). She was prescribed Colcrys, Tramadol, and Allopurinol and advised to stay off the foot for a couple days. (R. at 479–80).

She was seen on December 28, 2012 for pain and edema at Westside Family Medical Clinic. (R. at 493).

On January 18, 2013, Brown saw Ricardo Alvillar, M.D. for a rheumatology consultation. (R. at 496). He assessed patellofemoral syndrome, macroglossia, and osteoarthritis of the left great than right ankle. (R. at 496).

Brown was seen at White County Medical Center on February 18, 2013 for chest pain. (R. at 506). She was treated with medication and discharged. (R. at 505, 507–08).

She returned to Westside Family Medical Clinic for ER follow-up on February 21, 2013. (R. at 492). She was seen on March 18, 2013 for complaints of sore throat, coughing, headache, chills, and fever. (R. at 491). On July 1, 2013, Brown visited for back pain. (R. at 490).

Brown was evaluated for bilateral knee pain on May 22, 2013 by Kyle Blickenstaff, M.D. (R. at 494). X-rays revealed degenerative changes, and he assessed bilateral knee tricompartmental osteoarthritis. (R. at 494). He treated her with a corticosteroid injection. (R. at 495).

Brown visited White County Medical Center on November 27, 2013 with complaints of back pain. (R. at 451). She was discharged and prescribed Norco and Flexeril. (R. at 455). On January 13, 2014, she returned with complaints of groin pain and back injury. (R. at 443). She was discharged with Miralax and Naproxen. (R. at 448). Brown was seen on April 1, 2014 complaining of cough, chills, fever, and headache. (R. at 440). She was discharged with Robitussin, Zithromax, and Norco. (R. at 441).

Brown went to Westside Family Medical Clinic on February 19, 2014 for abdominal bloating and lower back pain. (R. at 487). She had a check-up on March 12, 2014. (R. at 486). On March 18, 2014, she discussed removal of moles on her neck. (R. at 485). On April 16, 2014, she returned with coughing and wheezing that had returned

4

after treatment with a Z-Pak two weeks prior, and also requested a refill on her pain medication for back spasms. (R. at 463). She returned on May 1, 2014 with continued coughing and wheezing. (R. at 462). She visited again on May 23, 2014 with a continued cough and back spasms. (R. at 461).

Bridgett Crockett, APN, filled out a Headaches Medical Source Statement on May 23, 2014, in which she opined that Brown has moderate migraine headaches one to two times per week that last two days each, that Brown is capable of low stress work, would be precluded from performing basic work activities and need a break when she has a headache, and would miss more than four days per month due to headaches. (R. at 458–59).

Brown presented at White County Medical Center on June 13, 2014 with back pain. (R. at 467). She was diagnosed with degenerative disk disease of the lumbar spine. (R. at 469). She was discharged with Flexeril and Norco. (R. at 471). On September 1, 2014, she presented with cough, chills, and headache. (R. at 557). She was diagnosed with migraine headache and acute bronchitis. (R. at 559). She was treated with Demerol HCl and Phenergan and discharged. (R. at 560–61).

At Westside Family Medical Clinic, Brown complained of coughing, gas, and sore throat on July 3, 2014. (R. at 607). On August 6, 2014, she came in complaining of a migraine she had had for three days and was prescribed Norco. (R. at 605). She came in for medication with back pain and knee pain on October 29, 2014 and received refills on her medications, including Prozac and Miralax. (R. at 603). On November 26, 2014, she came in for her back, hip, and knee pain and given a Norco prescription. (R. at 601).

Brown had a laparoscopic cholecystectomy on December 10, 2014 at CHI St. Vincent Infirmary. (R. at 617–23).

Brown presented to Westside Family Medical Clinic with a cough, back spasms, and back pain on January 9, 2015. (R. at 599). She visited for her migraines on January 26, 2015. (R. at 596). On February 27, 2015, she came in with a headache, congestion, and a bad taste in her mouth. (R. at 594). She was prescribed Levaquin, Imitrex, Norco, Flexeril, and Ambien. (R. at 594). She was seen on March 30, 2015 for swelling in her ankles and complaints of back pain. (R. at 593). She came in for follow up after an urgent care visit for a cough and medication refills on April 30, 2015. (R. at 589). On June 2, 2015, she saw Dr. Killough for medication refills and foot swelling. (R. at 585). She returned on July 9, 2015 for stomach bloating/gas, headache, neck pain, back ache, and medication refills. (R. 581). She saw Dr. Killough on August 10, 2015 for medication refills, sinus drainage, ear ache, and coughing. (R. at 578). On September 23, 2015, she was seen for congestion, cough, ear pain, fever, back pain, and chills. (R. at 574).

On October 5, 2015, Brown visited White County Medical Center with complaints of cough and fever. (R. at 547). She was diagnosed with pleuritic chest pain. (R. at 551). She was treated with DuoNeb and discharged with prescriptions for Zithromax, Norco, and Prednisone. (R. at 554). She was seen on October 8, 2015 for chest pain. (R. at 518). She was diagnosed with intercostal chest pain. (R. at 542). She was treated with aspirin and Norco and discharged with a Norco prescription. (R. at 543–44).

Brown began treatment for back pain at White River Medical Center Pain Management Clinic on December 8, 2015. (R. at 626). She was prescribed Norco and Gabapentin. (R. at 630).

### III. Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187

(8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Brown argues that the ALJ erred in finding that she possessed transferable job skills, did not fully and fairly develop the record regarding her depression, and did not conduct a psychiatric review technique analysis. Brown's arguments must fail for the reasons stated below.

Brown first argues that the personnel clerk and order clerk jobs identified by the VE would require more adjustment than is permissible and therefore are inappropriate jobs. Brown notes that regulations require that the ALJ will find that a claimant has "skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to [claimant's] previous work that [claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

Brown argues that the personnel clerk job is in a different industry and that the order clerk job may have to be performed in a different work setting than her prior work. The VE testified that there would be some adjustment required for the personnel clerk job as it is in a different industry. (R. at 70). The VE also testified that the order clerk job would require "potentially little adjustment." (R. at 71–72). Brown argues that the ALJ mischaracterized the VE's testimony in the decision by stating that the VE testified there would be "very little, if any, vocational adjustment." (R. at 27). However, the ALJ went on to specifically recount the VE's testimony almost verbatim. (R. at 27).

7

This argument is unpersuasive. 20 C.F.R 404.1568(d)(4) provides, in part, that if a claimant, such as Brown, is closely approaching retirement age (age 60 or older) and has a severe impairment or impairments that limit her to no more than light work, the ALJ will find that the claimant has skills that are transferable to skilled or semiskilled light work only if the light work is so similar to the claimant's previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. A complete similarity of skills, though, is not required. See 20 C.F.R. 404.1568(d)(3). Here, the ALJ could and did rely upon the VE's testimony and find that Brown's transferable skills are sufficiently similar to her previous work and would require very little vocational adjustment.

Brown also argues that the ALJ failed to develop the record concerning her mental impairment of depression and failed to complete a psychiatric review technique assessment. Both arguments fail for the same reason.

Contrary to Brown's argument, she never claimed a mental impairment. Her application alleged heel spurs, diabetes, high blood pressure, deteriorating disks in back, and gout as her disabling conditions. (R. at 96). There was no testimony presented at either hearing concerning any disabling effects of depression. The ALJ noted that, despite references to a history of depression, "no acceptable medical source has diagnosed this condition during the relevant period, the claimant did not allege or testify to any limitations caused by this condition or describe any mental limitations, and takes no prescribed psychiatric medication." (R. at 23). There are some references to fluoxetine/Prozac and Elavil in the medical record, but these are sparse. Indeed, in all the pharmacy records, there is only one reference to fluoxetine. (*Compare* R. at 375 *to* R. at 363–69, 371–72, 374, 376–78, 380–90). There are also no records from a mental

health provider indicating that Brown has sought any type of counseling or therapy. With such a paucity of evidence of mental limitations, the undersigned cannot find that the ALJ failed to fully and fairly develop the record concerning Brown's depression. As there was no properly alleged mental impairment and no limitation therefrom, the ALJ was also not required to conduct a psychiatric review technique analysis.

IV. **Recommended Disposition**

The ALJ did not err in finding that Brown had transferable job skills, fully and fairly developed the record, and was not required to complete a psychiatric review technique analysis. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 8th day of November, 2018.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE